[Civ. No. 47854. Second Dist., Div. Four. Oct. 13, 1976.]

JOE B. CRAMER, Plaintiff and Appellant, v.
QUEEN OF ANGELS HOSPITAL, Defendant and Respondent.

COUNSEL

Girardi & Keese and Michael K. Bridges for Plaintiff and Appellant.

Early, Maslach, Boyd & Leavey, Harry Boyd and Richard C. Harding for Defendant and Respondent.

## OPINION

**FILES, P. J.**—Plaintiff Joe B. Cramer appeals from the judgment entered following the grant of a motion for nonsuit in favor of defendant Queen of Angels Hospital. In his complaint, plaintiff alleged that he contracted serum hepatitis by reason of a blood transfusion administered to him while he was a patient in respondent hospital. Prior to trial, he elected to proceed on the theories of strict liability in tort and breach of express and implied warranties only.

Health and Safety Code section 1606 provides as follows: "The procurement, processing, distribution, or use of whole blood, plasma, blood products, and blood derivatives for the purpose of injecting or transfusing the same, or any of them, into the human body shall be construed to be, and is declared to be, for all purposes whatsoever, the rendition of a service by each and every person, firm, or corporation

participating therein, and shall not be construed to be, and is declared not to be, a sale of such whole blood, plasma, blood products, or blood derivatives, for any purpose or purposes whatsoever."

In *Shepard* v. *Alexian Brothers Hosp.* (1973) 33 Cal.App.3d 606 [109 Cal.Rptr. 132], the court determined, by reason of that statute and its underlying rationale, that a hospital which administered a blood transfusion could not be held liable under the doctrine of strict liability in tort or for breach of warranty. That decision is controlling here.

■ Plaintiff contends that Health and Safety Code section 1606 is unconstitutional in that it creates a denial of the equal protection of the law for "the victims of contaminated blood transfusions, who unlike all other tort victims of defective products do not have the doctrine of strict liability in their legal arsenal."

■ California courts follow the United States Supreme Court in employing a two-level test for measuring legislative classifications against the equal protection clause. " ' "In the area of economic regulation, the high court has exercised restraint, investing legislation with a presumption of constitutionality and requiring merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose. [Citations.] [¶] On the other hand, in cases involving 'suspect classifications' or touching on 'fundamental interests,' . . . the court has adopted an attitude of active and critical analysis, subjecting the classification to strict scrutiny. [Citations.] Under the strict standard applied in such cases, the state bears the burden of establishing not only that it has a *compelling* interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose." ' " (*People* v. *Olivas,* 17 Cal.3d 236, 243 [131 Cal.Rptr. 55, 551 P.2d 375].)

■ The effect of section 1606 is that the doctrines of strict liability and breach of implied warranty may not be used to shift the economic consequences of the use of contaminated blood products to a supplier who is free from fault. This legislation is "in the area of economic regulation," and is clothed with a presumption of constitutionality.

It is reported that at least 44 states have adopted statutes for the purpose of eliminating the imposition of liability without fault upon those who dispense blood products. (See *Heirs of Fruge* v. *Blood Services* (W.D. La. 1973) 365 F.Supp. 1344, 1350.)

In *McDaniel* v. *Baptist Memorial Hospital* (6th Cir. 1972) 469 F.2d 230, 234, upholding the constitutionality of the Tennessee statute, the court explained that legislatures have taken notice that blood and blood plasma may transmit hepatitis, and that there is no way of determining which blood may contain the contaminant. In the face of that situation, legislatures have determined that the production and use of human blood and its derivatives for therapeutic purposes should be encouraged; and for this purpose those who provide these products, and who are themselves free from fault, should not be required to bear the economic loss which might otherwise be imposed under the rules of strict liability which are applicable to sellers of commercial products generally. (See also *Heirs of Fruge* v. *Blood Services* (5th Cir., 1975) 506 F.2d 841, 848, upholding the state constitutionality of the Louisiana statute.)

In the light of this rationale, section 1606 is not arbitrary or capricious, for it bears a reasonable relationship to a legitimate state purpose. The presumption of constitutionality must therefore prevail.

The judgment is affirmed.

Kingsley, J., and Dunn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 9, 1976.