[No. H001204. Sixth Dist. Dec. 10, 1985.]

HYLAND THERAPEUTICS, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
MICHELE GALLAGHER, Individually and as Executrix, etc., et al.,
Real Parties in Interest.

[No. H000728. Sixth Dist. Dec. 10, 1985.]

MILES LABORATORIES, INC., Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
MICHELE GALLAGHER, Individually and as Executrix, etc., et al.,
Real Parties in Interest.

510

**COUNSEL**

Sedgwick, Detert, Moran & Arnold, Kevin J. Dunne and Bruce A. Edwards, O'Connor, Cohn, Dillon & Barr, Duncan Barr and Lisa T. Ungerer for Petitioners.

No appearance for Respondent.

Morgan, Morgan, Towery, Morgan & Spector, Linda Deacon and W. Robert Morgan for Real Parties in Interest.

**OPINION**

**THE COURT.**\*—A hemophiliac contracted acquired immune deficiency syndrome after being treated with clotting products manufactured from human blood by Miles Laboratories, Inc. (of which Cutter Laboratories is a division) (hereafter Miles) and Hyland Therapeutics (a division of Travenol Laboratories, Inc.) (hereafter Hyland). He subsequently died. His heirs

---

\*Before Agliano, Acting P. J., Brauer, J., and Leach, J.†

†Assigned by the Chairperson of the Judicial Council.

brought a wrongful death action against Miles and Hyland on negligence and strict product liability theories; his widow has joined in her own behalf, alleging that before he died the decedent communicated AIDS viruses or antibodies to her. Both Miles and Hyland demurred generally. Both demurrers were overruled, and both Miles and Hyland seek review by extraordinary writ. In this court neither petitioner addresses the propriety of plaintiffs' negligence theory. The narrow questions presented are (1) whether the language of Health and Safety Code section 1606 bars plaintiffs' strict liability theory as pleaded against Miles and Hyland, and, if so, (2) whether section 1606 as so applied is constitutional. We conclude that both questions must be answered in the affirmative.

So far as relevant to the plaintiffs' strict liability theory, the first amended complaint alleges the following facts:

Plaintiffs are the widow and minor children, and heirs at law, of the decedent. Miles and Hyland engage in "the manufacture of blood products." The decedent "had hemophilia which caused him to take Factor VIII blood products for the correction of said condition. Factor VIII is the plasma clotting factor in human blood. Blood products manufactured by defendants, described generally as concentrates of human antihemophilic factor (Factor VIII), were used by decedent as a temporary means of replacing the missing clotting factor in order to correct or prevent bleeding." Within a relevant period the decedent had used Factor VIII blood products manufactured by Miles and Hyland, under medical supervision. "Said Factor VIII blood products were contaminated with a virus known to cause AIDS. As a proximate result of having taken intravenous injections of said contaminated Factor VIII blood products, the plaintiff [*sic*] contracted AIDS and ultimately died from the effects of that disease. . . ." Miles and Hyland "manufactured, packaged and sold antihemophilic Factor VIII concentrates, which concentrates were a fraction of pooled plasma obtained from many paid donors. Said Factor VIII blood products were contaminated with the AIDS virus. . . . Plaintiff [*sic*] used such blood products in the manner intended, un[a]ware of the risk that the AIDS virus could be transmitted by use of blood products contaminated with said virus. . . ." The widow was exposed to the AIDS virus through intimate relationship with the decedent; "[t]est results have indicated the presence of the AIDS virus and/or AIDS antibody in her blood." The events alleged proximately caused surviving damages to the decedent and damages to his widow and heirs.

The first amended complaint further alleges that Health and Safety Code Section 1606 "was enacted at a time when hepatitis was an undetectable viral agent. However, under the present state of art, hepatitis is detectable through tests of donor blood and all manufacturers and/or suppliers of blood

and blood products are required by federal law to screen all blood for the hepatitis virus. The AIDS virus is likewise detectable through testing."

Miles demurred generally to the strict-liability count and to the count alleging communication of AIDS to the widow; Hyland, served considerably later, demurred generally to all counts. The demurrers were overruled. Miles sought reconsideration which was denied. These petitions followed. We find preliminarily that writ review is appropriate. (Cf. *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].)

■   Section 1606 was initially enacted in 1955 as Health and Safety Code section 1623. (Stats. 1955, ch. 1078, § 1, p. 2053.) It was renumbered in 1963. (Stats. 1963, ch. 1055, § 2, p. 2487.) Its language reads now as it did when enacted in 1955: "The procurement, processing, distribution, or use of whole blood, plasma, blood products, and blood derivatives for the purpose of injecting or transfusing the same, or any of them, into the human body shall be construed to be, and is declared to be, for all purposes whatsoever, *the rendition of a service by each and every person, firm, or corporation participating therein, and shall not be construed to be, and is declared not to be, a sale* of such whole blood, plasma, blood products, or blood derivatives, for any purpose or purposes whatsoever."

■   The parties agree that, in California, strict product liability theories apply only to sales or other commercial transfers of *goods* and not to *services*. (*Pena* v. *Sita World Travel, Inc.* (1978) 88 Cal.App.3d 642, 644 [152 Cal.Rptr. 17]; *Barton* v. *Owen* (1977) 71 Cal.App.3d 484, 498 [139 Cal.Rptr. 494]; *Silverhart* v. *Mount Zion Hospital* (1971) 20 Cal.App.3d 1022, 1027 [98 Cal.Rptr. 187]; cf. *Shepard* v. *Alexian Brothers Hosp.* (1973) 33 Cal.App.3d 606, 610 [109 Cal.Rptr. 132]; cf. also 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 832, pp. 3127-3128; Note (1974) 22 UCLA L. Rev. 401, 402.)

In *Fogo* v. *Cutter Laboratories, Inc.* (1977) 68 Cal.App.3d 744 [137 Cal.Rptr. 417], heirs of a decedent who died of hepatitis after being injected with a plasma product, "Konyne," developed by Cutter Laboratories had sued Cutter. On appeal from judgment on a defense verdict, the Court of Appeal considered, in connection with instruction issues, "whether the doctrine of strict products liability is applicable . . . ." (68 Cal.App.3d at p. 750.) The court concluded that the doctrine was not applicable; it stated one of its two alternative rationales for this conclusion in terms of section 1606: "It is quite apparent that in the instant case we are not dealing with a hospital or a blood bank, but with a private manufacturer of pharmaceuticals that is engaged in the business of distributing Konyne, a blood product, and puts that 'product on the market in order to profit therefrom.' Health

and Safety Code section 1606 to date has been held applicable to hospitals and blood banks, but the question of its applicability to commercial vendors of blood products has not been answered. We are persuaded that the clear language of section 1606 requires us to construe the respondent's distribution of Konyne as the rendition of a service and not to be 'a sale of such whole blood, plasma, blood products, or blood derivatives, for any purpose or purposes whatsoever.'" (68 Cal.App.3d at p. 752.)

In this action as in *Fogo* the clear language of section 1606 would bar plaintiffs' strict liability theory against the blood-product manufacturers. Plaintiffs do not deny that on its face section 1606 is applicable. Instead they argue that section 1606 *should not* apply. They contend:

(1) That as initially enacted in 1955 the language of section 1606 was intended not to give immunity from civil liability but rather to provide a sales and use tax exemption;

(2) That as distinct from hospitals and blood banks, commercial blood-product manufacturers such as Miles and Hyland are not providers of services but simply commercial suppliers of products for profit, directly subject to the stream-of-commerce rationale of strict product liability (cf. *Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256, 262-263 [37 Cal.Rptr. 896, 391 P.2d 168]); and

(3) That there are sound policy reasons subjecting blood-product manufacturers to strict product liability.

■ Each of these contentions is plausible. Collectively they might be persuasive, but for the well-established rule that "if statutory language is 'clear and unambiguous there is no need for construction, and courts should not indulge in it.' [Citation]. Unless [the party seeking an alternative construction] can demonstrate that the natural and customary import of the statute's language is either 'repugnant to the general purview of the act,' or for some other compelling reason, should be disregarded, this court must give effect to the statute's 'plain meaning.' [Citation.]" (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218-219 [188 Cal.Rptr. 115, 655 P.2d 317].) We consider the plain-meaning rule fundamental to the concept of separation of powers. The judiciary has no power to rewrite plain statutory language. We suggest that plaintiffs' arguments be addressed to the Legislature; we note that the Legislature has recently addressed specific statutory language to the problem of transmittal of AIDS through blood (e.g., Stats. 1985, ch. 23), but has never amended the unambiguous language of section 1606.

Plaintiffs next assume, alternatively, that the purpose of section 1606 was to shield "blood donors and suppliers from strict liability for [i]njury arising out of the therapeutic injection of blood into a human being, thereby encouraging and promoting the constant availability of an adequate blood supply," but argue that the distinction section 1606 would draw between "victims of highly specialized blood products" and victims of other defectively designed or manufactured products is not rationally related to that purpose and therefore that the section denies plaintiffs equal protection of the laws.

Plaintiffs advance two subarguments:

First, a legislative classification which operates to exempt blood-product manufacturers cannot be justified in terms of the needs of society in general or of hemophiliacs in particular. Such a narrow exemption (plaintiffs argue) is irrelevant to the perceived general need for an adequate supply of transfusible blood, and there are adequate substitute blood-clotting agents for hemophiliacs.

Second, blood used to manufacture the clotting agents involved in this action "is obtained solely from paid donors" and thus "is in no way related to the general supply of blood collected for transfusion purposes." Thus (plaintiffs argue) the legislative classification cannot be rationalized in terms of the need for transfusible blood.

▮ Plaintiffs acknowledge that their interest in asserting strict-liability theories against Miles and Hyland is not "fundamental" and thus that the question on the merits is whether section 1606 "bears a rational relationship to a legitimate state purpose." (*Weber* v. *City Council* (1973) 9 Cal.3d 950, 958-959 [109 Cal.Rptr. 553, 513 P.2d 601]; cf. *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 16-17 [95 Cal.Rptr. 329, 485 P.2d 529] ("'some rational relationship to a conceivable legitimate state purpose'"); *In re Arthur W.* (1985) 171 Cal.App.3d 179, 187 [217 Cal.Rptr. 183].)

Plaintiffs also concede that section 1606 has been found not to deny equal protection as applied to hospitals and blood banks: The analysis has been that there is a legitimate state interest in encouraging an available supply of blood for therapeutic purposes and that section 1606 is rationally related to this interest. (*MacDonald* v. *Sacramento Medical Foundation Blood Bank* (1976) 62 Cal.App.3d 866, 872-873 [133 Cal.Rptr. 444]; *Cramer* v. *Queen of Angels Hospital* (1976) 62 Cal.App.3d 812, 815-816 [133 Cal.Rptr. 339].)

Equal-protection aspects of the application of section 1606 to commercial blood-product manufacturers such as Miles and Hyland were not considered

in *Fogo* and do not appear to have been addressed in any other California case. ■ Plaintiffs focus on the legitimate-state-purpose issue, arguing that the therapeutic need identified in the hospital and blood-bank cases is limited to blood for transfusion purposes and should not be extended to commercial preparation of blood products for therapeutic purposes other than transfusion.

We disagree. In our view there is a legitimate state interest in manufactured blood products. We concur in the perception that "legislatures have determined that the production and use of human blood *and its derivatives* for therapeutic purposes should be encouraged; and for this purpose those who provide these products, and who are themselves free from fault, should not be required to bear the economic loss which might otherwise be imposed under the rules of strict liability which are applicable to sellers of commercial products generally." (*Cramer* v. *Queen of Angels Hospital, supra,* 62 Cal.App.3d 812, 816 (italics added).) ■ It should be borne in mind that section 1606 does not immunize Miles and Hyland from liability. Rather, its effect is to require that those who make tort claims on the basis of alleged blood-product defects bear the burden of showing that the blood-product manufacturer was either negligently or intentionally at fault. This relatively modest restriction upon the theories available to plaintiffs such as these is rationally related to a legitimate state purpose.

The American Red Cross and the American Blood Resources Association have separately applied for leave to file amicus curiae briefs in support of the blood-product manufacturers. We appreciate the willingness of these organizations to assist this court. It appears to us, however, that the issues before us have been adequately briefed by the parties. We therefore deny these applications.

We conclude that the demurrers should have been sustained, without leave to amend, insofar as addressed to plaintiffs' strict product liability theories.

The procedural requirements for a peremptory writ in the first instance have been met. (*Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-183 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directing the Santa Clara County Superior Court, in its action 548947, to modify the orders it made on April 9, 1985, and on August 23, 1985, overruling the demurrers of Miles Laboratories, Inc., and Hyland Therapeutics, respectively, to provide in each

instance that insofar as directed to plaintiffs' strict product liability theories the demurrers are sustained without leave to amend.

A petition for a rehearing was denied December 26, 1985, and the petition of real parties in interest for review by the Supreme Court was denied March 12, 1986.