22868

Helen Marianne SAMSON, Plaintiff v. The GREENVILLE HOSPITAL SYSTEM and the Carolina-Georgia Blood Center, Inc., Defendants.

Russell Joseph SAMSON, Plaintiff v. The GREENVILLE HOSPITAL SYSTEM and the Carolina-Georgia Blood Center, Inc., Defendants.

Russell Joseph SAMSON, as Guardian ad Litem for Camaron Joseph Samson, a minor under the age of fourteen (14) years, Plaintiff v. The GREENVILLE HOSPITAL SYSTEM and the Carolina-Georgia Blood Center, Inc., Defendants.

(368 S. E. (2d) 665)

Supreme Court

---

*Michael Parham* of *Parham and Smith,* Greenville, *for plaintiffs.*

*G. Dewey Oxner, Jr., Frances D. Ellison,* and *James H. Ritchie, Jr.* of *Haynsworth, Marion, McKay and Guerard,* Greenville, *for defendant Greenville Hosp. System.*

*Paul J. Foster, Jr.,* and *Robert P. Foster* of *Foster, Gaddy and Foster,* Greenville, *Janet Ann Napolitano* of *Lewis and Roca,* Phoenix, Ariz., *for defendant Carolina-Georgia Blood Center, Inc.*

*Stephen G. Morrison* and *David E. Dukes* of *Nelson, Mullins, Riley and Scarborough,* Columbia, *Bruce M. Chad-*

*wick, Fern P. O'Brian,* and *Brendan Collins* of *Arnold & Porter,* Washington, D. C., *amicus curiae* for *American National Red Cross; Associate Gen. Counsel Karen S. Lipton,* of *American Red Cross,* Washington, D. C., *of counsel.*

Heard April 4, 1988.

Decided May 9, 1988.

*Per Curiam:*

Pursuant to Supreme Court Rule 46, we agreed to answer the following question certified by order of The Honorable Joe F. Anderson, Jr., United States District Court for the District of South Carolina:

> Whether § 44-43-10 of the South Carolina Code of Laws, 1976, as amended, is unconstitutional as being violative of the Equal Protection Clause of article I, section 3, of the Constitution of the State of South Carolina.

S. C. Code Ann. Section 44-43-10 (1985) is South Carolina's "blood shield" statute; it exempts providers of blood and blood products from implied warranty-based liability:

> The implied warranties of merchantability and fitness shall not be applicable to a contract for the sale, procurement, processing, distribution or use of human tissues such as corneas, bones or organs, whole blood, plasma, blood products, or blood derivatives. Such human tissues, whole blood, plasma, blood products or blood derivatives shall not be considered commodities subject to sale or barter and the transplanting, injection, transfusion or other transfer of such substances into the human body shall be considered a medical service.

## FACTS

Plaintiff (Mrs. Samson) was given a transfusion of blood in January 1984 while a patient at a hospital operated by defendant Greenville Hospital System (Hospital). Hospital obtained the blood from defendant Carolina-Georgia Blood Center (the Center), which had drawn the blood from volunteer donor "John Doe" in December 1983. The blood trans-

fused into Mrs. Samson was allegedly tainted with the acquired immune deficiency syndrome (AIDS) virus. Unaware of the possibility that she may have received a tainted transfusion, Mrs. Samson became pregnant in June or July 1985 and gave birth to her son, plaintiff Camaron Joseph Samson, in March 1986.

When Doe returned to donate more blood in September 1985, a laboratory screening device to detect prior exposure to the AIDS virus was in effect. Doe's blood was tested and indicated prior exposure to the AIDS virus. Through a "lookback" program, the Center notified Hospital that Hospital had received potentially AIDS—infected blood in 1984. Mrs. Samson was notified and a laboratory analysis was conducted. Mrs. Samson allegedly tested positive for the antibody indicating prior exposure to the AIDS virus. Her son also allegedly tested positive and is now in "full-blown" AIDS.

Plaintiffs have asserted four causes of action against defendants, including a cause for breach of the implied warranties of merchantability and fitness for a particular purpose.[1] Defendants have moved for summary judgment in the District Court, claiming that Section 44-43-10 insulates them from the implied warranties causes of action. Plaintiffs maintain that Section 44-43-10 violates the Equal Protection Clause of the South Carolina Constitution.

## DISCUSSION

We begin our analysis by recognizing that a statute enacted pursuant to the legislature's powers is presumptively constitutional. *Nichols v. South Carolina Research Authority*, 290 S. C. 415, 351 S. E. (2d) 155 (1986). Other courts have noted that blood shield statutes are entitled to the same presumption. *See McDaniel v. Baptist Memorial Hospital*, 469 F. (2d) 230, 235 (6th Cir. 1972) (applying Tennessee law); *Cramer v. Queen of Angels Hospital*, 62 Cal. App. (3d) 812, 133 Cal. Rptr. 339 (1976); *Glass v. Ingalls Memorial Hospital*, 32 Ill. App. (3d) 237, 336 N.E. (2d) 495, 498 (1975).

---

[1] S. C. Code Ann. § 36-2-314 (1976) is the implied warranty of merchantability. S. C. Code Ann. § 36-2-315 (1976) is the implied warranty of fitness for a particular purpose.

Our research indicates—and plaintiffs frankly concede—that of the 48 blood shield statutes enacted nationwide,[2] not one has been ruled unconstitutional on Equal Protection grounds. Numerous courts have flatly rejected Equal Protection-based attacks on blood shield statutes. *See Heirs of Fruge v. Blood Services*, 506 F. (2d) 841 (5th Cir. 1975); *McDaniel v. Baptist Memorial Hospital, supra; Hyland Therapeutics v. Superior Court*, 175 Cal. App. (3d) 509, 220 Cal. Rptr. 590 (1985); *Cramer v. Queen of Angels Hospital, supra; McDonald v. Sacramento Medical Foundation Blood Bank*, 62 Cal. App. (3d) 866, 133 Cal. Rptr. 444 (1976); *Hill v. Jackson Park Hospital*, 39 Ill. App. (3d) 223, 349 N. E. (2d) 541 (1976); *Bingham v. Lutheran General & Deaconess Hospitals*, 34 Ill. App. (3d) 562, 340 N. E. (2d) 220 (1975).

In reviewing a statute challenged on Equal Protection grounds, we give great deference to a legislatively created classification, and the classification will be sustained if it is not plainly arbitrary and there is "any reasonable hypothesis" to support it. *Smith v. Smith*, 291 S. C. 420, 424, 354 S. E. (2d) 36, 39 (1987)(quoting *Gary Con-*

---

[2] *See* Ala. Code § 7-2-314(4) (1984); Alaska Stat. § 45.02.316(e) (1986); Ariz. Rev. Stat. Ann. § 36-1151 (1986); Ark. Stat. Ann. § 82-1608 (1986); Cal. Health & Safety Code § 1606 (West Supp. 1988); Colo. Rev. Stat. § 13-22-104(2) (1987); Conn. Gen. Stat. Ann. § 19a-280 (West 1986); Del. Code Ann. tit. 6, § 2-316(5) (1975); Fla. Stat. Ann. § 672.316(5) (West Supp. 1988); Ga. Code Ann. § 51-1-28 (1982); Haw. Rev. Stat. § 325-91 (1985); Idaho Code § 39-3702 (Supp. 1987); Ill. Ann. Stat. ch. 111½, § 5102 (Smith-Hurd Supp. 1987); Ind. Code Ann. § 16-8-7-2 (West 1983); Iowa Code Ann. § 142A.8 (West Supp. 1987); Kan. Stat. Ann. § 65-3701 (1985); Ky. Rev. Stat. Ann. § 139.125 (Baldwin 1983); La. Rev. Stat. Ann. § 9:2797 (West Supp. 1988); Me. Rev. Stat. Ann. tit. 11, § 2-108 (Supp. 1987); Md. Health-Gen. Code Ann. § 18-402 (Supp. 1987); Mass. Gen. Laws Ann. ch. 106, § 2-316(5) (West Supp. 1987); Mich. Comp. Laws § 333.9121(2) (Supp. 1987); Minn. Stat. Ann. § 525.928 (West 1975); Miss. Code Ann. § 41-41-1 (Supp. 1987); Mo. Ann. Stat. § 431.069 (Vernon Supp. 1987); Mont. Code Ann. §§ 50-33-102 to 104 (1987); Neb. Rev. Stat. § 71-4001 (1986); Nev. Rev. Stat. Ann. § 460.010 (Michie 1986); N. H. Rev. Stat. Ann. § 507:8-b (1983); N.M. Stat. Ann. § 24-10-5 (1986); N. Y. Public Health Law § 580(4) (McKinney Supp. 1988); N. C. Gen. Stat. § 130A-410 (1986); N.D. Cent. Codes § 41-02-33 (3) (d) (1983); Ohio Rev. Code Ann. § 2108.11 (Anderson 1976); Okla. Stat. Ann. tit. 63, § 2151 (West 1984); Or. Rev. Stat. § 97.300 (1984); 42 Pa. Cons. Stat. Ann. § 8333 (Purdon 1982); R. I. Gen. Laws § 23-17-30 (Supp. 1987); S. C. Code Ann. § 44-43-10 (1985); S. D. Codified Laws Ann. § 57A-2-315.1 (Supp. 1987); Tenn. Code Ann. § 47-2-316 (5) (1979); Tex. Civ. Prac. & Rem. Code Ann. § 77.003 (Vernon 1986); Utah Code Ann. § 26-31-1 (1984); Va. Code § 32.1-297 (1985); Wash. Rev. Code Ann. § 70.54.120 (Supp. 1988); W. Va. Code § 16-23-1 (1985); Wis. Stat. Ann. § 146.31 (2) (West Supp. 1987); Wyo. Stat. § 35-5-110 (1977).

*crete Products, Inc. v. Riley,* 285 S. C. 498, 504, 331 S. E. (2d) 335, 338 (1985)). The Equal Protection clause is satisfied if: "1) the classification bears a reasonable relation to the legislative purpose sought to be effected; 2) the members of the class are treated alike under similar circumstances and conditions; and 3) the classification rests on some reasonable basis." *Smith v. Smith, supra; Gary Concrete Products, Inc. v. Riley,* at 504, 331 S. E. (2d) at 339.

A. *Reasonable Relation to Legislative Purpose*

First, we must determine the legislative purpose ■ sought to be effected through enactment of Section 44-43-10. Plaintiffs argue that the absence of legislative history behind the blood shield statute requires the conclusion that no legislative purpose underlay its enactment. We disagree.

Legislative intent is best determined by examining the language of the statute itself. *See Gambrell v. Travelers Ins. Co.,* 280 S. C. 69, 71, 310 S. E. (2d) 814, 816 (1983). The language of Section 44-43-10 reflects a legislative intent to exempt blood providers from liability based on implied warranties; to remove human tissues and blood from the class of "products" which are bought and sold; and to characterize the transfusion of blood as a medical service rather than a sale.

The encouragement of a readily available supply of blood and blood products has long been recognized as the legislative purpose behind enactment of blood shield statutes in other states. *See Heirs of Fruge v. Blood Services, supra* (underlying public policy to protect blood supply), *Zichichi v. Middlesex Memorial Hospital,* 204 Conn. 399, 528 A. (2d) 805 (1987) (ensuring availability of blood and tissue to citizens in need); *Hyland Therapeutics v. Superior Court, supra* (legislative purpose of encouraging blood supply); *Cramer v. Queen of Angels Hospital, supra* (encouragement of production and use of blood and its derivatives); *McDonald v. Sacramento Medical, supra* (ensuring "constant availability" of adequate blood supply); *accord Kozup v. Georgetown University,* 663 F. Supp. 1048 (D.D.C. 1987). We believe that protection of a continuing adequate blood supply also motivated the enactment of Section 44-43-10 in South Carolina.

Further, we believe the classification created by section 44-43-10 bears a reasonable relation to that legislative goal. We agree with the Supreme Court of Connecticut's "reasonable relation" analysis of a blood shield statute nearly identical to South Carolina's:

> These statutes reflect a legislative judgment that to require providers to serve as insurers of the safety of these materials might impose such an overwhelming burden as to discourage the gathering and distribution of blood. To ensure that such services remain adequate and affordable, legislatures have chosen to limit liability to defects that are the result of negligence. . . .

*Zichichi v. Middlesex Memorial Hospital, supra,* at 409, 528 A. (2d) at 810. The "overwhelming burden" referred to by the Connecticut court has been described elsewhere as the threat of "crippling legal liability." *Heirs of Fruge, supra,* at 844; *McAllister v. American Nat'l Red Cross,* 240 Ga. 246, 240 S. E. (2d) 247 (1977).

We have recently analyzed the legislative purpose underlying the statute of limitations for bringing medical malpractice actions. In *Smith v. Smith, supra,* this Court upheld the three year limit as bearing "a rational relationship to the legitimate legislative purpose of reducing health care providers' exposure to liability and continued delivery of reasonable health care services." *Id.* at 425, 354 S. E. (2d) at 39. We hold that a similar rational relationship exists here between Section 44-43-10 and the legitimate legislative goal of ensuring an adequate blood supply. The statute's classification and purpose are rationally linked by the legislature's "relatively modest restriction upon the theories available to plaintiffs such as these. . . ."[3] *Hyland Therapeutics, supra,* at 516, 220 Cal. Rptr. at 594.

B. *Equal Treatment of Class Members*

Equal Protection also requires that members of the statutory class be treated alike under similar circumstances and conditions. Equal treatment must extend

---

[3] Section 44-43-10 does not bestow complete immunity on blood providers. Nothing in the statute precludes plaintiffs from proceeding on a negligence theory.

to both the privileges conferred and liabilities imposed. *Marley v. Kirby*, 271 S. C. 122, 245 S. E. (2d) 604 (1978).

Plaintiffs claim Section 44-43-10 creates discriminatory class schemes for potential plaintiffs by irrationally distinguishing between product-related tort victims and victims of transfusion-related diseases. Plaintiffs also claim that certain potential defendants, namely hospitals and blood banks, are irrationally protected from suit on implied warranty theories while paid donors and blood components manufacturers are left exposed to warranty-based causes of action. We disagree.

First, we find nothing irrational in the legislature's decision to distinguish between individuals injured as a result of blood transfusions and individuals injured by improperly designed or manufactured man-made goods. Equally rational was the creation of a class of distributors exempt from implied warranties. We agree with the many courts and legislatures which recognize that blood and its derivatives are rendered unique and medically vital by man's inability to produce a synthetic substitute. *See e.g., Hill v. Jackson Park Hospital, supra* (due to special and indispensable place it occupies in the practice of medicine, blood is different from drugs, surgical implements and food).

Next, Section 44-43-10 designates the provision of blood as a service, not a product. Transfusion-related disease victims have been legislatively removed from the class of persons injured by "products" and thus eligible to bring causes of action based on breach of implied warranties. The statute applies across-the-board to individuals who are injured as a result of blood transfusions; no member of the affected class is able to pursue the warranty theories in seeking recovery from a blood provider.

Nor do we discern any unequal treatment of potential defendants. Plaintiffs' assertion that commercial blood components manufacturers and paid donors remain exposed to suits for breach of implied warranties has no basis in the statute itself. Section 44-43-10 encompasses not only blood, but also "blood products or blood derivatives." Moreover, the statute does not distinguish paid donors from voluntary donors or commercial distributors from charitable distributors. *Compare* § 44-43-10 *with* Wash. Rev. Code Ann. § 70.54.120(Supp. 1988) (exemption from implied warranties

does *not* apply to any transaction in which donor receives compensation) *and* N. C. Gen. Stat. § 130A-410 (1986) (provision of blood is a service, not a sale, "whether or not any remuneration is paid. . . .").

C. *Reasonable Basis*

The third requirement of Equal Protection is that the classification created by the statute under scrutiny rest upon some reasonable basis. *Smith v. Smith, supra.* The initial determination of reasonableness in a classification lies with the legislature and will not be set aside by this court unless it is plainly arbitrary. *Id.* Further, the party assailing the statute has the burden of showing that its classification does not rest upon any reasonable basis and is essentially arbitrary. *Ford v. Atlantic Coast Line Railroad Co.,* 169 S. C. 41, 123, 168 S. E. 143, 172 (1932).

Plaintiffs' attempt to show Section 44-43-10 lacks a reasonable basis by arguing that 1) no empirical data exists indicating that protecting blood providers from liability on implied warranty theories generates a more adequate supply of safe blood, and 2) the "tremendous difference" between hepatitis victims and AIDS victims undermines the reasonableness of the statute's purpose. We disagree and hold that the classification created by the statute rests upon a reasonable basis.

First, plaintiffs, not defendants, bear the burden of showing the classification lacks a reasonable basis. Next, we believe plaintiffs' policy arguments on the efficacy of Section 44-43-10 in encouraging an adequate blood supply would be better directed to the legislature, for this Court will "not sit as a super-legislature to judge the wisdom or desirability of legislative policy determinations. . . ." *Gary Products, Inc., supra,* (quoting *City of New Orleans v. Dukes,* 427 U. S. 297, 96 S. Ct. 2513, 49 L.Ed. (2d) 511 (1976) ). Further, we do not believe that the *nature* of the transfusion-related disease involved here is a matter of constitutional significance. While Section 44-43-10 was not passed with blood-transmitted AIDS in mind, the rationale behind the statute's classification is as applicable to AIDS as it would be to hepatitis or malaria. *See Roberts v. Suburban Hospital Ass'n.* 73 Md. App. 1, 532 A. (2d) 1081, 1088-1089 (1987).

## CONCLUSION

Because we conclude that Section 44-43-10's classification bears a reasonable relation to the legislative purpose sought to be effected, its class members are treated alike under similar circumstances, and the classification rests on a reasonable basis, we are of the opinion that the statute comports with the Equal Protection clause of the Constitution of South Carolina.

Certified Question Answered.