**J.D. DOE, Plaintiff,**

v.

**TRAVENOL LABORATORIES, INC., d/b/a Hyland Therapeutics, a division of Travenol Laboratories, Inc., Defendant.**

**Civ. No. 4–88–620.**

United States District Court, D. Minnesota, Fourth Division.

Nov. 4, 1988.

Mark Hallberg, Hvass, Weisman & King, Minneapolis, Minn., for plaintiff.

Clifford M. Greene, Thomas E. Sanner, George J. Socha, Jr., Popham, Haik,

Schnobrich & Kaufman, Minneapolis, Minn.; Richard L. Berkman, Dechert, Price & Rhoads, of counsel, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This case is a products liability action in which the plaintiff, who appears under the pseudonym J.D. Doe, alleges that he contracted AIDS–Related Complex (ARC) from an antihemophilic factor which he received prior to surgery. Defendant Baxter Healthcare Corporation (Baxter) [1] brings a motion to dismiss Doe's strict liability and breach of warranty claims on the ground that Minnesota law insulates the suppliers of blood products from such claims. The motion will be granted.

## FACTS

On a motion to dismiss, the Court takes the facts as pled in the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

Doe is a hemophiliac. His body does not produce human antihemophilic Factor VIII, a protein necessary for the effective clotting of blood. As a result, Doe must take Factor VIII Concentrate whenever he suffers injury causing bleeding or undergoes surgery. Factor VIII Concentrate is manufactured by pooling the blood plasma of thousands of donors and extracting the desired protein.

In August 1984,[2] Doe underwent an operation to remove a kidney stone at the University of Minnesota Hospital and Clinic. Because of his hemophilia, Doe received prophylactic quantities of Factor VIII Concentrate from a lot manufactured by Baxter.

On or about October 10, 1984, the University of Minnesota Comprehensive Hemophilia Center notified Doe that the lot from which he had received Factor VIII was being recalled; a donor who had contributed plasma to that lot had subsequently died of Acquired Immune Deficiency Syndrome (AIDS).[3]

In June 1986, almost two years after receiving the Factor VIII Concentrate processed by Baxter, Doe had his blood tested for the presence of antibodies to the AIDS virus, HIV. The test results indicated that Doe had been infected with HIV. Doe has since developed ARC and stands a great likelihood of contracting AIDS.

Doe sued Baxter in state court on June 24, 1988 for breach of warranty, strict liability and negligence. Baxter removed the case to federal court on July 22, 1988. Pursuant to Fed.R.Civ.P. 12(b)(6), Baxter now moves to dismiss Doe's breach of warranty and strict liability claims as failing to state a claim upon which relief can be granted.

## DISCUSSION

This case is the most recent in a series of cases nationwide in which individuals infected with HIV have advanced breach of warranty and strict liability claims against processors of blood products. Every case but one has found that either a state blood shield statute or state common law barred recovery without a showing of fault. *See, e.g., Coffee v. Cutter Biological,* 809 F.2d 191 (2d Cir.1987); *Poole v. Alpha Therapeutic Corp.,* —— F.Supp. —— (N.D.Ill. Apr. 13, 1988); *Shelby v. St. Luke's Episcopal Hospital,* 1988 W.L. 28996 (S.D.Tex. Mar. 17, 1988); *Doe v. Cutter Laboratories,* No. CA–2–87–0013 slip op. —— F.Supp. ——, (N.D.Tex. Feb. 5, 1988); *Jones v. Miles Laboratories, Inc.,* No. C86–83, —— F.Supp. ——, (N.D.Ga. Dec. 28, 1987);

---

**1.** Baxter Healthcare Corporation was formerly known as Travenol Laboratories, Inc. Hyland Therapeutics is a division of Baxter. The caption for this case refers to the defendant "Travenol Laboratories, Inc., d/b/a Hyland Therapeutics, a division of Travenol Laboratories, Inc."

**2.** Although the complaint alleges that the operation took place in July 1984, apparently the

surgery took place in August of that year. Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) at 2.

**3.** AIDS is caused by a virus, the Human Immunodeficiency Virus (HIV), which destroys the natural immunity system serving to protect the body against disease.

*McKee v. Miles Laboratories, Inc.,* 675 F.Supp. 1060 (E.D.Ky.1987) (appeal pending); *Clark v. Alpha Therapeutic Corp.,* No. 87–5230 (S.D.Ill. Oct. 27, 1987); *Kozup v. Georgetown University,* 663 F.Supp. 1048 (D.D.C.1987), *aff'd in relevant part,* 851 F.2d 437 (D.C.Cir.1988); *Roberts v. Suburban Hospital Assoc.,* 73 Md.App. 1, 532 A.2d 1081 (1987); *Hyland Therapeutics v. Superior Court,* 175 Cal.App.3d 509, 220 Cal.Rptr. 590 (1985). *But see Doe v. Miles Laboratories,* 675 F.Supp. 1466 (D.Md.1987) (decision withdrawn and question certified to state court of appeals where statutory language at time cause of action arose protected processors and distributors of blood products from liability "for the virus serum hepatitis").

The statutory and common law protection of the suppliers of blood and blood products from strict liability and breach of warranty claims developed during the mid 60's through early 70's in response to the transmission of the hepatitis virus by blood and blood products. At that time, no means existed for ensuring that blood and its components were not infected with the hepatitis virus. States feared that the threat of liability without fault would drive the suppliers out of the very necessary business of providing blood. *See* Comment, *Hospital and Blood Banks Liability to Patients Who Contract AIDS through Blood Transfusion,* 23 San Diego L.Rev. 875, 883 (1986).

In Minnesota, this issue was first addressed in *Balkowitsch v. Minneapolis War Memorial Blood Bank,* 270 Minn. 151, 132 N.W.2d 805 (1965). The plaintiff in *Balkowitsch* brought breach of warranty claims against a non-profit blood bank to recover damages after she contracted hepatitis through a transfusion of impure blood that had been collected, processed and sold by the blood bank. 132 N.W.2d at 806. The court, adopting the reasoning of *Perlmutter v. Beth David Hospital,* 308 N.Y. 100, 123 N.E.2d 792 (1954), held that furnishing blood did not constitute a sale of goods, but a service. Because warranty

claims must be based on a sale of goods, the holding functioned to protect the defendant from causes of action which impose liability "on the theory of implied warranty." 132 N.W.2d at 810. The breach of warranty claims were dismissed. Although the doctrine of strict liability for defective products was not adopted in Minnesota until 1967 [4] and therefore *Balkowitsch* cannot itself be read as protecting the suppliers of blood from strict liability in tort, there is no question that the reasoning in *Balkowitsch* has the effect of barring such claims because, like claims for breach of warranty, strict liability claims must be based on a sale of goods. *See,* Restatement (Second) of Torts § 402A; *Hudson v. Snyder Body, Inc.,* 326 N.W.2d 149 (Minn.1982).

Four years after *Balkowitsch* was decided, the Minnesota Legislature adopted the Uniform Anatomical Gift Act, now codified as amended at Minn.Stat. § 525.921 *et seq.* The Legislature added a "blood shield" provision which was not part of the Uniform Act. That provision states:

The use of any part of a body for the purpose of transplantation in the human body shall be construed, for all purposes whatsoever, as a rendition of a service by each and every person participating therein and shall not be construed as a sale of such part for any purpose whatsoever.

Minn.Stat. § 525.928. "Part" is defined as "organs, tissues, eyes, bones, arteries, blood, other fluids and any other portions of a human body." Minn.Stat. § 525.921, subd. 6. The statute follows the reasoning of *Balkowitsch* and protects any person participating in the transplantation of a body part from claims for breach of warranty or strict liability by defining the activity as a rendition of a service, not a sale.

The furnishing of Factor VIII Concentrate is squarely within the meaning of section 525.928. First, Factor VIII is a portion of human blood and "part," as defined in the statute, includes blood or any

---

**4.** *McCormack v. Hankscraft Co.,* 278 Minn. 322, 154 N.W.2d 488 (1967).

other portion of the human body.[5] Second, the University of Minnesota Hospital used Factor VIII Concentrate to transfuse into plaintiff's body during an operation for the purpose of ensuring that his blood would clot. Third, Baxter, a "person" within the meaning of the statute,[6] prepared the Concentrate which was furnished to the hospital. In preparing the Concentrate, Baxter participated in the use of the blood derivative. By including every person participating in the use of a body part, and defining person to include corporations, the Minnesota Legislature ensured that entities like Baxter would fall within the statute's protection.

Plaintiff argues that section 525.928 is designed only to provide the donor of an anatomical gift or his estate with "certain protections and immunities," relying principally on the fact that the section is located with those provisions of Minnesota law concerning probate proceedings. Plaintiff's argument is untenable. The implications drawn from the statute's location in the Code cannot be so great as to contradict the plain meaning of the statute's language. In light of the *Balkowitsch* holding, the statute is clearly an effort to protect entities like Baxter from liability without fault. The statute provides that the use of any part of a body "shall be construed, for all purposes whatsoever, as a rendition of a service by each and every person participating therein and *shall not be construed as a sale of such part for any purpose whatsoever.* " Minn.Stat. § 525.928 (emphasis added). Moreover, the fact that this section is codified amongst the probate laws is not inconsistent with the statute's plain meaning. In fact, statutory provisions shielding the processors of blood from strict liability and breach of

warranty claims are located within the Anatomical Gift Acts in other states. *See, e.g.,* Iowa Code § 142A.8 (1988 Supp.); N.C.Gen.Stat. § 130A–410 (1987); Va.Code § 32.1–297 (1985); Wyo.Stat. § 35–5–110 (1988).

The public policy considerations relevant to the transmission of the AIDS virus through distribution of Factor VIII Concentrate are identical to those raised by the transmission of the hepatitis virus through whole blood.[7] The first cases of the syndrome that has since been named AIDS were diagnosed in June and July of 1981. *Kozup v. Georgetown University,* 663 F.Supp. 1048, 1051 (D.D.C.1987), *aff'd in relevant part,* 851 F.2d 437 (D.C.Cir.1988). In July 1982, three cases of *pneumocystis carinii* pneumonia, one of the infections that characterizes AIDS, were diagnosed in hemophiliacs. 663 F.Supp. at 1051. By January 1983 some health care professionals and public health organizations had come to believe that the still unidentified virus was blood-borne. 663 F.Supp. at 1051–52. However, it was not until early 1984 that the medical community reached a consensus that AIDS was transmitted through blood and soon afterwards, in April 1984, scientists identified a virus, initially called HTLV–III, as the cause of AIDS. 663 F.Supp. at 1052. The virus was later renamed HIV. By May 1985, an enzyme-linked immunosorbent assay (ELISA) test that could detect antibodies to the AIDS virus in the blood became available. 663 F.Supp. at 1052. Despite use of the ELISA test, suppliers of blood and blood products have been unable to insure that the blood supply is 100 percent free from HIV. This is because a person infected with HIV may not develop antibodies de-

---

5. The Texas Blood Shield Statute, Tex.Civ.Prac. & Rem.Code Ann. § 77.003, like the Minnesota statute, employs the term "body part." That term is defined as "any tissue, organ, blood or components thereof from a human." *Id.* § 77.001. In *Doe v. Cutter Laboratories,* —— F.Supp. —— No. CA–2–87–0013, slip op. (N.D. Tex. Feb. 5, 1988), the court held that a supplier of blood derivative products, including lyophilized plasma products (like Factor VIII), was immune under the blood shield statute from strict liability and breach of warranty claims.

6. The Uniform Anatomical Gift Act defines person to include an individual, a corporation, a partnership or any other legal entity. Minn. Stat. § 525.921, subd. 7.

7. Plaintiff argues that the Court should not decide this motion without taking evidence on the relevant public policy considerations. The necessary facts are, however, well-documented and plaintiff fails to suggest any new considerations which might be revealed through discovery.

tectable by the ELISA test until several weeks or even months after the infection began. *Transmission of Human Immunodeficiency Virus (HIV) by Blood Transfusions Screened as Negative for HIV Antibody,* 318 New.Eng.J.Med. 473, 476 (Feb. 25, 1988).

Thus, just as was the case with the hepatitis virus, blood processors are not able through the exercise of due care to insure that the blood supply is free from HIV. Yet, their various products must remain available. Hemophiliacs, like Doe, depend on the availability of Factor VIII Concentrate which has lengthened and improved the quality of their lives. Because the market for these products is small,[8] their availability would be threatened if the cost of the inherent risk of HIV infection were imposed on the manufacturer. Therefore, despite the devastating consequences resulting from the transmission of HIV through products like Factor VIII Concentrate, virtually every court that has considered the question has interpreted blood shield statutes to apply to the commercial processors of antihemophilic factors. *Coffee v. Cutter Biological,* 809 F.2d 191 (2d Cir.1987); *Poole v. Alpha Therapeutic Corp.,* —— F.Supp. —— (N.D.Ill.1988); *Jones v. Miles Laboratories, Inc.,* —— F.Supp. ——, No. C86–83 (N.D.Ga. Dec. 29, 1987); *McKee v. Miles Laboratories, Inc.,* 675 F.Supp. 1060 (E.D.Ky.1987) (appeal pending); *Clark v. Alpha Therapeutic Corp.,* No. 87–5230 (S.D.Ill. Oct. 27, 1987); *Hyland Therapeutics v. Superior Court,* 175 Cal.App.3d 509, 220 Cal.Rptr. 590 (1985); *Roberts v. Suburban Hospital Assoc.,* 73 Md.App. 1, 532 A.2d 1081 (1987). *Contra, Doe v. Miles Laboratories,* 675 F.Supp. 1466 (D.Md.1987) ("[t]hose who choose to operate in the economic marketplace play by the rules applicable to all"; decision subsequently withdrawn and question certified to state court of appeals).

8. Baxter states that the entire patient population for Factor VIII Concentrate is between 10,000 and 20,000 people. Fewer than 10,000 of these are severe A hemophiliacs. Baxter also states that more than seventy-five percent of severe A

This decision does not, of course, foreclose recovery upon a showing of negligence.

Accordingly, based on the foregoing, and upon review of all the files, records and proceedings herein,

IT IS ORDERED that Baxter's motion to dismiss Doe's claims for breach of warranty and strict liability be granted.

hemophiliacs were infected with HIV by the end of 1982. Defendant's Reply to Plaintiff's Memorandum in Opposition to Its Motion to Dismiss Pursuant to Rule 12(b)(6) at 10.