22977

Jane DOE, Plaintiff-Appellant v. AMERICAN RED CROSS BLOOD SER-VICES, S. C. REGION, Defendent-Appellee. John DOE, Plaintiff-Appellant v. AMERICAN RED CROSS BLOOD SERVICES, S. C. REGION, Defendant-Appellee.

(377 S. E. (2d) 323)

Supreme Court

*Charles L. Henshaw, Jr.,* of *Law Offices of O. Fayrell Furr, Jr., P.A.,* and *Benjamin M. Mabry,* of *Cromer & Mabry,* Columbia, *for plaintiffs-appellants.*

*David E. Dukes* and *Stephen G. Morrison,* of *Nelson, Mullins, Riley & Scarborough,* Columbia; *Bruce M. Chadwick* and *Edward L. Wolf,* of *Arnold & Porter,* Washington, D. C., *for defendant-appellee. of counsel: Karen Shoos Lipton,* of *American Red Cross,* Washington, D. C.

*Harold W. Jacobs,* of *Nexsen, Pruet, Jacobs & Pollard,* Columbia, and *David E. Willett,* of *Hassard, Bonnington, Rogers & Huber,* San Francisco, Cal., *amicus curiae for American Association of Blood Banks.*

*Heyward E. McDonald,* of *McDonald, McKenzie, Fuller, Rubin and Miller,* Columbia, *amicus curiae for United Way of South Carolina* and *United Way of the Midlands.*

*Steven Labensky* and *Janet Napolitano,* of *Lewis and Roca,* Phoenix, Ariz., and *Donald V. Richardson, II,* of *Richardson, Plowden, Grier and Howser,* Columbia, *amicus curiae for Council of Community Blood Centers.*

*Jeter E. Rhodes, Jr.,* of *Whaley, McCutchen, Blanton & Rhodes,* Columbia, *amicus curiae for South Carolina Medical Ass'n.*

Heard Oct. 31, 1988.

Decided Feb. 21, 1989.

*Per Curiam:*

Pursuant to Supreme Court Rule 46, we agreed to answer four questions certified by the Honorable Clyde H. Hamilton, United States District Court for the District of South Carolina. The questions presented to this court by Judge Hamilton are as follows:

> (1) Does South Carolina recognize a separate standard of care for professionals under which generally recognized and accepted practices in the profession constitute the standard of care owed by a member of that profession?
>
> (2) If South Carolina recognizes a "professional negligence standard," would it apply to blood banks such as the Red Cross?
>
> (3) Does S. C. Code Ann. § 33-55-210 (1987) violate the equal protection clause of the United States or the South Carolina Constitution?
>
> (4) If S. C. Code Ann. § 33-55-210 (1987) is constitutional in its entirety or in relevant part, how is the employee of a charitable organization "adjudged" to have acted recklessly, wantonly, or grossly negligent as that term is used in S. C. Code Ann. § 33-55-220 (1987)?

## FACTS

On January 9, 1985, the plaintiff, Jane Doe, underwent spleen and gall bladder surgery at Lexington County Hospi-

tal. During her operation, she was given a unit of blood apparently containing the human immunodeficiency virus ("HIV"), which causes the fatal acquired immune deficiency syndrome, commonly known as AIDS. The American Red Cross Blood Services, South Carolina Region, collected the infected blood from a volunteer donor on January 4, 1985. At the time the blood was collected, a direct test for AIDS was not available. Four months after the transfusion, a direct test for AIDS was developed. Doe contends, however, that Red Cross was negligent in failing to employ a surrogate test before January of 1985 to identify and exclude blood donors who were at high risk for transmitting AIDS.

Doe concedes that the generally recognized and accepted practice among blood banks nationwide in January of 1985 was not to use surrogate tests to screen out donors at high risk for spreading AIDS. Red Cross moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the basis that professionals cannot be negligent when their acts or omissions are consistent with generally recognized and accepted professional practices. As a professional service, Red Cross contends that they are entitled to summary judgment.

### I. *Professional Standard of Care*

Although this court has not explicitly announced a rule setting forth a separate standard of care for professionals, we have implicitly considered and accepted such a standard in several cases. For instance, in 1979, in *Kemmerlin v. Wingate*, 274 S. C. 62, 261 S. E. (2d) 50 (1981), Justice Ness, writing for the majority, noted that as a professional, an accountant was held to the standard of care of other accountants. 261 S. E. (2d) at 51. There, we affirmed the involuntary nonsuit rendered against the plaintiff because he failed to present any evidence tending to show the standard of care applicable to professional accountants or any damages proximately caused by the accountants' acts or omissions.

In *King v. Williams*, 276 S. C. 478, 279 S. E. (2d) 618, 620 (1981), this court abolished the "locality rule" which adjudged a physician's skills against those of other physicians in his community, and adopted a professional standard of care not bound by any geographical restrictions. We articu-

lated the standard of care which must be observed by a physician as "that of an average, competent practitioner acting in the same or similar circumstances." 279 S. E. (2d) at 620.

We approved a judge's instruction to a jury in a medical malpractice case concerning the standard of care for a physician in *Cox v. Lund,* 286 S. C. 410, 334 S. E. (2d) 116 (1985). There, the trial judge instructed that to reach a verdict against the doctor for malpractice, the jury would have to find "by the greater weight of the evidence that the physician did not possess the degree of skill common to other doctors, or that he failed or was negligent in so exercising such skills in the treatment of a patient." 334 S. E. (2d) at 119. The trial judge further charged that in a malpractice case, the negligence was "the failure to do that which an ordinary, careful and prudent physician or surgeon would do under the circumstances shown by the evidence to have existed at the time of the transaction in question, or, it [was] the doing of that which an ordinary, careful and prudent physician or surgeon would not have done under the same circumstances." 334 S. E. (2d) at 119. Thus, we again impliedly recognized a separate standard of care for physicians.

Our court of appeals also had occasion to address the issue of a professional standard of care in *Welch v. Whitaker,* 282 S. C. 251, 317 S. E. (2d) 758 (Ct. App. 1984). In *Welch,* the court of appeals affirmed the trial court's directed verdict in favor of the ophthalmologist because the plaintiff presented no expert medical testimony that the ophthalmologist deviated from the "recognized standard among ophthalmologists." 317 S. E. (2d) at 762. The court applied the professional standard in *Welch* specifically to the scope of a physician's duty to disclose information, but generally to the negligence cause of action.

Again, in *Folkens v. Hunt,* 290 S. C. 194, 348 S. E. (2d) 839, 843 (Ct. App. 1986), the court of appeals analyzed the standard of care for a professional in a malpractice action. The court stated that "a public accountant who fails to perform in accordance with accepted professional standards may be liable in tort to his client for his negligence." 348 S. E. (2d) at 842. The court further expounded on the standard of care

and competence of public accountants by explaining that accountants must "render their services with that degree of skill, care, knowledge and judgment usually possessed and exercised by members of that profession ... in accordance with accepted professional standards and in good faith without fraud or collusion." 348 S. E. (2d) at 843. *See also, Bonaparte v. Floyd,* 291 S. C. 427, 354 S. E. (2d) 40, 45 (Ct. App. 1987). (To recover for medical malpractice, a plaintiff must show failure by a physician to exercise that degree of care and skill which is ordinarily employed by the profession under similar conditions and in like circumstances.)

Although our courts have previously recognized the ■ professional standard of care, this court has not heretofore set forth with precision the standard of care to be used to measure the conduct of professionals. We now hold that in a professional negligence cause of action, the standard of care that the plaintiff must prove is that the professional failed to conform to the generally recognized and accepted practices in his profession. If the plaintiff is unable to demonstrate that the professional failed to conform to the generally recognized and accepted practices in his profession, then the professional cannot be found liable as a matter of law. In setting forth such a standard, we defer to the collective wisdom of a profession, such as physicians, dentists, ophthalmologists, accountants and any other profession which furnishes skilled services for compensation. *See, Kemmerlin v. Wingate,* 274 S. C. 62, 261 S. E. (2d) 50 (1981). Establishing such a standard which measures conduct of a professional against other professionals is rooted, as Professor Prosser commented, in this court's "healthy respect ... for the learning of a fellow profession, and [our] reluctance to overburden it with liability based on uneducated judgment." Prosser and Keeton, *Law of Torts,* § 32, p. 189 (5th ed. 1984).

II. *Transfusion of Blood as a Professional Service*

Having concluded that South Carolina recognizes a ■ professional standard of care, we must next decide whether the collection and processing of blood for transfusion is a medical service.

We acknowledged in *Samson v. Greenville Hospital Sys-*

*tem,* 295 S. C. 359, 368 S. E. (2d) 665 (1988) that Section 44-43-19 reflected a legislative intent to . . . characterize the transfusion of blood as a medical service. 368 S. E. (2d) at 667. Since the transfusion of blood is characterized as a skilled medical service, then we hold that the Red Cross, as a blood collector and processor, should be treated as a professional. Thus, in order to maintain her action for negligence, Doe must prove the Red Cross failed to conform to the generally recognized and accepted practices in its profession.

We find ample support for our holding in other jurisdictions. *See, Shelby v. St. Luke's Episcopal Hospital,* Civ. Action No. H-86-3780 (S. D. Tex Mar. 17, 1988) [1988 WL 28996]; *Hines v. St. Joseph's Hospital,* 86 N. M. 763, 527 P. (2d) 1075 (Ct. App.), *cert. denied,* 87 N. M. 111, 529 P. (2d) 1232 (1974); *Hutchins v. Blood Services of Montana,* 161 Mont. 359, 506 P. (2d) 449 (1973); *Kozup v. Georgetown University,* 663 F. Supp. 1048 (D. D. C. 1987); *aff'd in relevant part,* 851 F. (2d) 437 (D. C. Cir. 1988).

III. *Section 33-55-210 Does Not Violate Equal Protection*

Red Cross affirmatively defends against Doe's action by asserting that S. C. Code Ann. § 33-55-210 (Law Co-op 1987) limits the tort liability of charitable institutions to actual damages not exceeding $200,000.[1] Doe moves for summary

---

[1] Section 33-55-210 provides as follows:

"Any person sustaining an injury or dying by reason of the tortious act of commission or omission of an employee of a charitable organization, when the employee is acting within the scope of his employment, may only recover in any action brought against the charitable organization for the actual damages he may sustain in an amount not exceeding two hundred thousand dollars. The judgment in an action under §§ 33-35-210 through 33-55-230 shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the charitable organization whose act or omission gave rise to the claim. The plaintiff, when bringing an action under the provisions of §§ 33-55-210 through 33-55-230 shall only name as a party defendant the charitable organization for which the employee was acting and shall not name the employee individually unless the charitable organization for which the employee was acting cannot be determined at the time the action is instituted. In the event the employee is individually named under the conditions permitted above, the entity for which the employee was acting shall be substituted as the party defendant when it can be so reasonably determined."

judgment on Red Cross' affirmative defense, claiming that the statute is violative of the equal protection clause.

The South Carolina Constitution provides that no "person shall be denied the equal protection of the laws." S. C. Const. Art. 1, § 3. In *Samson, supra,* we articulated the three requirements to analyze whether a statute violates the equal protection clause. We stated that "the requirements of equal protection are satisfied if (1) the classification bears a reasonable relation to the legislative purpose sought to be effected; (2) the members of the class are treated alike under similar circumstances and conditions; and (3) the classification rests on some reasonable basis." 368 S. E. (2d) at 666. When determining the constitutionality of a statute, this court will presume the legislative act to be valid and that every intendment will be indulged in favor of the act's validity. *Richland County v. Campbell,* 294 S. C. 346, 364 S. E. (2d) 470, 472 (1988).

A. Reasonable Relation to Legislative Purpose

We first must determine the legislative purpose sought to be effected through the enactment of Section 33-55-210. Legislative intent is best determined by examining the language of the statute itself. *Samson,* 368 S. E. (2d) at 667. (Citing *Gambrell v. Travelers Ins. Co.,* 280 S. C. 69, 310 S. E. (2d) 814 (1983)). The language of Section 33-55-210 indicates a clear legislative purpose to encourage the formation of charitable organizations, to promote charitable donations, and to preserve the resources of the charitable organizations. Furthermore, we held previously in *Talley v. South Carolina Higher Education Tuition Grants Committee,* 289 S. C. 483, 347 S. E. (2d) 99, 100 (1986) that it was rational for a government to make distinctions between those in business for profit and those who have eleemosynary motives. We, therefore, hold that the limitation of liability in Section 33-55-210 bears a rational relationship to the legislative goal.

Doe argues that the legislative purpose of Section 33-55-210 is not rational because of this court's decision in *Fitzer v. Greater Greenville, South Carolina, Young Men's Christian Association,* 277 S. C. 1, 282 S. E. (2d) 230 (1981). In *Fitzer,* however, this court did not address the constitu-

tionality of the charitable immunity doctrine. There, this court abrogated South Carolina's common law charitable immunity doctrine without considering the applicability of the equal protection clause. Doe's counsel conceded at oral argument that *Fitzer* was not dispositive of the equal protection argument. Since *Fitzer* is distinguishable from the case at bar, we find that it is not controlling of whether or not the legislative purpose of Section 33-55-210 is reasonable.

### B. Equal Treatment of Class Members

Equal protection also requires that the members are treated alike under similar circumstances and conditions. *Samson, supra.* Doe argues that the statute treats potential plaintiffs differently because it imposes a limitation only on those whose actual damages exceed the limitation. Doe further asserts that because of the difference in size and income among charities, the statute will impact differently on charitable organizations.

We find that although the impact of $200,000 damage judgment may vary according to the size of the charitable organization, the varying impact does not violate the equal protection clause. *See generally, Duke Power Co. v. South Carolina Public Service Commission,* 284 S. C. 81, 326 S. E. (2d) 395 (1985) (utility rate differential among class members did not violate the equal protection clause). Moreover, we find that potential plaintiffs are not treated disparately because the same monetary cap applies equally to the entire class of plaintiffs.

### C. Rational Basis

Finally, Section 33-55-210 must be founded upon some reasonable basis. *Samson v. Greenville Hospital System, supra.* Doe argues that Section 33-55-210 lacks a reasonable basis because it sets forth no reason for the $200,000 figure and does not differentiate between charitable organizations of different sizes, risks or resources.

We give great deference to a legislatively created classification, and the classification will be sustained if it is not plainly arbitrary and there is "any reasonable hypothesis" to support it. *Smith v. Smith,* 291 S. C. 420,

424, 354 S. E. (2d) 36, 39 (1987). The initial determination of reasonableness in a classification lies with the Legislature. *Id.* We hold that the classification is not arbitrary, and there is a reasonable relationship between promoting charitable activities and limiting the liability of entities that engage in such activities.

Having found that Section 33-55-210 bears a reasonable relation to the classification sought to be effected, that its class members are treated alike under similar circumstances, and that the classification rests on a reasonable basis, we conclude that Section 33-55-210 does not violate the equal protection clause.

IV. *Adjudging of Liability of Employee Pursuant to Section 33-55-210*

Doe moved before Judge Hamilton to add as defendants several Red Cross nurses. Doe contends they were reckless, wanton and grossly negligent in failing permanently to disqualify the infected donor in question based upon a health history he gave approximately five months before Doe was transfused with the infected blood.

Section 33-55-210 provides that in a suit against the charitable organization, the employees of the organization shall not be named individually unless the identity of the employer organization cannot be determined at the time of the suit. S. C. Code Ann. § 33-55-210 (Law Co-op 1987). Section 33-55-220 enunciates an exception to Section 33-55-210 by providing "that the bar to any action against the employee, provided herein, shall not apply where the employee is adjudged to have acted recklessly, wantonly or grossly negligent." S. C. Code Ann. § 33-55-220 (Law Co-op 1987).

We construe Section 33-55-220 to mean that employees may be named as defendants, upon an allegation of reckless, wanton or grossly negligent conduct. Section 33-55-210 will still bar recovery unless Doe offers sufficient proof of such conduct.

Certified questions answered.