21554

Matthew Barlow FITZER, A Minor Under the Age of Fourteen (14) Years, by His Guardian Àd Litem, Ardis C. Fitzer, Appellant, v. GREATER GREENVILLE SOUTH CAROLINA YOUNG MEN'S CHRISTIAN ASSOCIATION, Respondent.

(282 S. E. (2d) 230)

*Stephen R. Fitzer,* Columbia, *for appellant.*

*Robert C. Wilson, Jr.,* Greenville, *for respondent.*

August 31, 1981.

NESS, Justice:

Appellant Matthew Barlow Fitzer appeals from an order granting respondent, Greater Greenville Young Men's Christian Association, summary judgment. We reverse.

Fitzer paid a fee and attended Camp Greenville which is operated by the respondent. During his stay at the camp he was injured by a rock thrown by another camper. Fitzer brought this negligence action to recover damages for the injuries he sustained. The trial court granted respondent summary judgment holding Fitzer's claim was barred by the doctrine of charitable immunity.

Fitzer asserts the trial court erred in granting summary judgment because the doctrine of charitable immunity is not applicable. We agree.

Fitzer's mother stated in her affidavit opposing summary judgment that she paid a fee so her son could attend camp, she procured liability insurance through the camp, and she was not aware the camp was an alleged charitable institution. Respondent contends Camp Greenville is: (1) operated by the Greater Greenville Y.M.C.A.; (2) operated at a loss; and (3) is a charitable institution.

In *Eiserhardt v. State Agricultural and Mechanical Society of South Carolina,* 235 S. C. 305, 111 S. E. (2d) 568 (1959), this Court held that in a tort action the charitable character of a corporation depends upon the facts of the particular case and *the charter is not conclusive as to immunity from liability.*

Viewing the evidence in the light most favorable to Fitzer, as we must do on appeal from an order granting summary judgment, we believe a genuine issue of material fact exists concerning whether or not Camp Greenville is a "charitable" or "commercial" venture. *Jamison v. Howard,* 271 S. C. 385, 247 S. E. (2d) 450 (1978).

Moreover, the critical issue is whether or not we will depart from our steadfast adherence to the antiquated rule which grants immunity from tort liability to charitable institutions. There is no tenet more fundamental in our law than liability follows the tortious wrongdoer. Yet, in South Carolina immunity is the rule and liability the exception. It is time to once and for all lay this anachronism to rest.

In modifying the doctrine of charitable immunity in *Brown v. Anderson County Hospital Association,* 268 S. C. 479, 234 S. E. (2d) 873 (1977), the Court held:

"[T]he reason for the change of position of this Court is, in part, . . . .

"The law's emphasis ordinarily is on liability, not immunity, for wrongdoing. *Respondeat superior* has widened it in an institutionally, and to a large extent corporately, organized community. Charity is generally no defense. When it has been organized as a trust or corporation, emphasis has shifted from liability to immunity. The conditions of law and of fact which created the shift have changed. The rule of immunity is out of step with the general trend of legislative and judicial policy in distributing losses incurred by individuals through the operation of an enterprise among all who benefit by it rather than in leaving them wholly to be borne by those who sustain them. . . .' *President and Directors of Georgetown College v. Hughes,* 76 U. S. App. D. C. 123, 130 F. (2d) (2d) 810 (1942)."

The public policy arguments which have been used to justify the rule no longer withstand judicial scrutiny. Proponents of the rule argue its abrogation will signal the demise of charities in our State. This argument was addressed in *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A. (2d) 193, 201 (1965), wherein the Court held:

"If havoc and financial chaos were inevitable to follow the abrogation of the immunity doctrine, as the advocates for its retention insist, this would certainly have become apparent in the states where that doctrine is no longer a defense."
Public policy is a dynamic not static concept, and what was valid in the past is not necessarily a valid policy today. Moreover, when the reason for a declared public policy no longer

exists, we should not hesitate to abolish it and the rules which are supported by the policy.

The rationale for abrogating the doctrine of charitable immunity can be stated no clearer than in *Geiger v. Simpson Methodist-Episcopal Church of Minneapolis,* 174 Minn. 389, 219 N. W. 463, 465 (1928), which held:

"It is a trite saying that charity begins at home . . . Men and corporations alike are required to be just before being charitable . . . We do not think it would be good public policy to relieve them from liability for torts or negligence. Where innocent persons suffer through their fault, they should not be exempted. That rule, in the long run, will tend to increased efficiency and benefit them and the public, as well as persons so injured. It is almost contradictory to hold that an institution organized to dispense charity shall be charitable and extend aid to others, but shall not compensate or aid those injured by it in carrying on its activities."

A rule which no longer serves a legitimate purpose should not be followed solely because of a dogged adherence to *stare decisis. Stare decisis* should be used to foster stability and certainty in the law, but, not to perpetuate error and injustice.

Furthermore, the general availability of liability insurance, which had been obtained in this case, underscores the unreasonableness of our continued adherence to this archaic doctrine. *Brown, supra,* 268 S. C. at 491, 234 S. E. (2d) 873.

The doctrine of charitable immunity has no place in today's society. We hold a charitable institution is subject to liability for its tortious conduct the same as any other person or corporation. The doctrine of charitable immunity is abolished in its entirety and the case is reversed and remanded for trial.

Reversed and remanded.

GREGORY and HARWELL, JJ., concur.

LEWIS, C. J., concurs in result.

LITTLEJOHN, J., dissents.

LITTLEJOHN, Justice (dissenting):

I respectfully dissent and would affirm the order of the lower court.

In my view whether charitable organizations should be sued or not and if so under what circumstances involves a matter of policy which should be dealt with by' the legislature and not by the courts.