643 S.E.2d 85

Linda Gail MARCUM, as Personal Representative of the Estate of Justin Michael Parks, Appellant,

v.

Donald Mayon BOWDEN, Gloria Bowden, and Utility Services Agency, Inc., Respondents.

and

Rudolph Barnes, as Personal Representative of the Estate of Doris Ann Barnes, Respondent,

v.

Cohen Dry Wall Inc., and Aelina Martin, as Personal Representative of the Estate of Orin Tilman Feagin, Defendants,

Of Whom Cohen Dry Wall Inc. is Petitioner.

No. 26259.

Supreme Court of South Carolina.

Reheard May 23, 2006.

Refiled Feb. 5, 2007.

Rehearing Denied April 18, 2007.

Gayla S.L. McSwain, of McNair Law Firm, of Charleston, and Robert L. Widener, Celeste T. Jones, and Andrew G. Melling, all of McNair Law Firm, of Columbia, for Appellant.

Eric G. Fosmire, of Collins & Lacy, Karl S. Brehmer, and J. Austin Hood, of Brown & Brehmer, all of Columbia, for Respondents.

N. Heyward Clarkson III, Charles F. Turner, Jr., and Sean A. Scoopmire, all of Clarkson, Walsh, Rheney & Turner, of Greenville, for Petitioner.

George J. Kefalos, of Charleston, for Respondent.

## ORDER

We granted petitions for rehearing in *Marcum v. Barnes,* Op. No. 26035 (S.C. Sup.Ct. filed August 29, 2005) and *Barnes*

*v. Cohen Dry Wall Inc.*, Op. No. 26036 (S.C. Sup.Ct. filed August 29, 2005). We now withdraw those opinions, and substitute the attached opinion which disposes of both appeals.

IT IS SO ORDERED.

s/ Jean H. Toal, C.J.
FOR THE COURT

Justice PLEICONES:

 These cases ask whether an adult social host who serves alcoholic beverages to an underage guest, that is, a person between the ages of 18 and 20 who is not a minor but who cannot, in most instances, legally consume alcohol, owes a duty to the guest or to third parties injured or killed by the guest in an alcohol related incident. We recognize today this common law duty:

> An adult social host who knowingly and intentionally serves, or causes to be served, an alcoholic beverage to a person he knows or reasonably should know is between the ages of 18 and 20 is liable to the person served and to any other person for damages proximately resulting from the host's service of alcohol.[1]

Because our decision today creates tort liability where formerly there was none, a social host will be liable only for claims arising after the effective date of this decision. *See, e.g., Toth v. Square D Co.*, 298 S.C. 6, 377 S.E.2d 584 (1989).[2] We therefore affirm the circuit court order in *Marcum* which granted summary judgment to the social host defendants, and

---

[1]. As the issue is not before us, we leave for another day the question whether an adult social host who is merely negligent in allowing the consumption of alcoholic beverages by a minor guest under the age of 18 may incur liability. Let there be no doubt, however, that an adult social host who knowingly and intentionally serves, or causes to be served, alcoholic beverages to a minor under 18 is liable to both the guest and third parties.

[2]. Although the dissent acknowledges this general rule, it would adopt a rule that occasionally "rewards" the plaintiff in the case where the new tort duty is adopted by giving that plaintiff the right to proceed on the new theory. The dissent cites numerous cases which allegedly support this new rule. Four of those cases involve the abolition of immunity defenses and a fifth the abolition of the assumption of the risk defense:

reverse the Court of Appeals' decision in *Barnes*[3] which affirmed a jury verdict against the host defendants.

## FACTS

In light of our disposition of these two appeals, we engage in only a brief review of the facts.

### A. *Marcum*

The Bowdens hosted a late afternoon cookout at their home, inviting mostly business acquaintances. The decedent, aged

---

simply put, the abolition of an affirmative defense does not create a new duty.

Further, in *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 337 S.E.2d 213 (1985) and *Kinard v. Augusta Sash & Door Co.*, 286 S.C. 579, 336 S.E.2d 465 (1985), this Court did allow the plaintiffs to proceed on the new tort theory, but pointed out in each case that the change had been foreshadowed. *See Ludwick*, 287 S.C. at 222, 337 S.E.2d at 215 ("language in recent opinions of this Court and our Court of Appeals reflects ... the likelihood that the [strict application of the employment at will] doctrine will be reviewed in an appropriate South Carolina case"); *Kinard*, 286 S.C. at 581, 336 S.E.2d at 466 ("modern trend recognizes that emotional tranquility is an interest worthy of protection;" and noting in footnote that new tort had recently been rejected in a different case because its facts did not state a claim); *compare Charleston County School Dist. v. State Budget & Control Bd.*, 313 S.C. 1, 437 S.E.2d 6 (1993) (tort retroactivity is permissible where "new tort" is simply an extension which had been clearly foreshadowed). To the extent the dissent would rely on commercial vendor liability cases as foreshadowing today's social host decision, we simply note that our most recent commercial vendor decision actually limited the server's liability. *Tobias v. The Sports Club*, 332 S.C. 90, 504 S.E.2d 318 (1998).

The only appellate decision which arguably permits the plaintiff the benefit of the newly-recognized, non-foreshadowed tort duty is *McCormick v. England*, 328 S.C. 627, 494 S.E.2d 431 (Ct.App.1997), but it is unclear whether the Court of Appeals found this new duty in the common law or in legislative enactments. *McCormick* may represent an aberration: it is certainly not our general rule.

Finally, the dissent's reliance on *Aka v. Jefferson Hosp. Assoc., Inc.*, 344 Ark. 627, 42 S.W.3d 508 (.2001) is simply misplaced: in *Aka* the Arkansas Supreme Court did not recognize a new common law tort, but rather overruled its prior interpretation of a statutory term in light of subsequent legislation. This statutory interpretation precedent arguably conflicts with South Carolina's jurisprudence, *see JRS Builders, Inc. v. Neunsinger*, 364 S.C. 596, 614 S.E.2d 629 (2005), and is neither relevant nor persuasive.

3. *Barnes v. Cohen Dry Wall, Inc.*, 357 S.C. 280, 592 S.E.2d 311 (Ct.App.2003).

19, attended the party where alcoholic beverages were available to all guests. The decedent, who had consumed alcohol at the party, left with other guests. One of these guests detained the decedent at the guest's home in order to give the decedent time to "sober up." The decedent drove himself from this guest's home, and was killed in a one-car accident. At the time of his death, the decedent had a blood alcohol content of 0.291%.

Decedent's mother, as his personal representative, brought this wrongful death action against the Bowdens and the company hosting the party (Hosts) alleging they were negligent. The circuit court granted the Hosts' motion for summary judgment, holding that a social host was not liable to an underage person who is injured or killed after consuming alcoholic beverages provided by the host.

## B. *Barnes*

*Barnes* involves a third party claim against the defendant social host rather than a first party claim as advanced in *Marcum*. As in *Marcum*, the decedent was a nineteen-year-old guest at a business-related function. There was evidence that the decedent consumed alcohol provided by the Host at the party. Again, like the underage drinker in *Marcum*, the decedent was not involved in an accident upon leaving the party, but rather traveled to several other locations before being involved in a two-car accident. This accident killed both the decedent and a passenger in the other car.

The passenger's personal representative (Barnes) sued both the Host and the estate of the underaged drinker in negligence. The jury returned a $750,000 verdict against both the Host and the decedent driver's estate, finding the decedent driver 80% responsible.

The Host appealed, contending as it had in the circuit court that it was not liable in tort to the third party killed by its underage guest. The Court of Appeals affirmed the jury verdict against the Host, finding two statutes which prohibit a social host from serving alcohol to persons under 21[4] created

---

4. S.C.Code Ann. §§ 61–4–90 and 61–6–4070 (Supp.2005).

a duty running from the host to third parties. We granted certiorari to review this decision.

## ISSUE

Does an adult social host who serves alcoholic beverages to an underage person owe a duty to that guest and/or a third party injured as a proximate result of the host's service of alcohol?

## ANALYSIS

 It is within this Court's purview to change the common law. *Singleton v. State*, 313 S.C. 75, 437 S.E.2d 53 (1993). "[T]he common law changes when necessary to serve the needs of the people [and][w]e have not hesitated to act in the past when it has become apparent that the public policy of this State is offended by outdated rules of law." *Russo v. Sutton*, 310 S.C. 200, 422 S.E.2d 750 (1992).[5]

 At present, a South Carolina social host incurs no liability to either first or third parties injured by an intoxicated adult guest. *Garren v. Cummings & McCrady, Inc.*, 289 S.C. 348, 345 S.E.2d 508 (Ct.App.1986). In fact, a commercial

---

5. In *Russo*, the Court abolished the tort of alienation of affections, and applied that ruling prospectively. In that opinion, the Court noted its ability to apply common law changes retroactively as well as prospectively. It would offend notions of fairness, however, to retroactively impose tort liability where previously there had been none, as would be the case here if we were to apply our new rule to these cases. This is especially so since the liability we create today arises from intentional conduct while these plaintiffs have contended only that these defendants were negligent. The dissent misapprehends the import of the use of the word "willful" in the complaints: the terms "willful" and "wanton" when pled in a negligence case are synonymous with "reckless," and import a greater degree of culpability than mere negligence. *See, e.g., Suber v. Smith*, 243 S.C. 458, 134 S.E.2d 404 (1964). Evidence that the defendant's conduct breached this higher standard entitles the plaintiff to a charge on punitive damages. *E.g., Cartee v. Lesley*, 290 S.C. 333, 350 S.E.2d 388 (1986). In order to permit these plaintiffs to take advantage of the rule we announce today, we would be required to order the circuit court to allow these plaintiffs to amend their complaints on remand, that is, assuming the plaintiffs could, consonant with Rule 11, SCRCP, plead an intentional tort. This ruling would compound the unfairness to these defendants, who, under the law as it then stood, committed no civil wrong when underage drinkers consumed alcohol at their parties.

host is liable only to third parties, and then only when he knowingly sells alcoholic beverages to an intoxicated person. *Tobias v. Sports Club, Inc.*, 332 S.C. 90, 504 S.E.2d 318 (1998). In imposing this limited liability upon commercial hosts, the Court relied upon alcohol beverage control statutes to extend liability to third persons, and upon public policy concerns to deny recovery to the intoxicated adult patron.

In other commercial settings, South Carolina appellate courts have held that a statute criminalizing the sale of beer or wine to a person under the age of 21 [6] and one providing regulatory penalties for the knowing sale to a person under 21 [7] places a duty on a commercial vendor. A vendor who violates this duty and sells to a person under 21 may be liable to the unlawful purchaser, and to third parties harmed by the purchaser's consumption of the alcohol. *Whitlaw v. Kroger Co.*, 306 S.C. 51, 410 S.E.2d 251 (1991). In a different setting, our courts imposed third party liability on the holder of an on-premises sales and consumption license who violated an alcoholic beverage control regulation by permitting an underage person to consume alcoholic beverages on the holder's premises. *Norton v. Opening Break of Aiken, Inc.*, 313 S.C. 508, 443 S.E.2d 406 (Ct.App.1994) *aff'd* 319 S.C. 469, 462 S.E.2d 861 (1995).

Simply stated, South Carolina courts have declined to impose a common law duty on social hosts who serve intoxicated adults, but have relied upon alcoholic beverage control statutes and regulations to impose liability, under limited circumstances, upon commercial hosts, vendors, and licensees. In deciding today whether to impose social host liability for service to underage guests, we keep these precedents in mind. We are also mindful that policy concerns militate against a rule which would hold a social host to a higher standard than that to which a commercial provider is held.

It is contended that we should impose social host liability for service to underage persons grounded upon two alcoholic beverage control statutes which impose criminal penalties, under certain circumstances, to persons who transfer or give

---

6. *See* S.C.Code Ann. § 61-4-50 (Supp.2005).

7. *See* S.C.Code Ann. § 61-4-580 (Supp.2005).

alcoholic beverages to persons under the age of 21.[8] As explained below, we find the source of duty is the common law, not legislative enactments. Conversely, we are urged to treat underage drinkers as we do other adults, placing no liability upon the social host for torts committed by their intoxicated guests. *See Garren, supra.* We decline to accept this invitation.

In determining whether, as a matter of public policy, underage drinkers should be viewed differently from adult drinkers aged 21 and over, we are guided by the policy expressions found in our state constitution and statutes. The constitution provides that persons aged 18 to 20 "shall be deemed sui juris and endowed with full legal rights and responsibilities, *provided,* that the General Assembly may restrict the sale of alcoholic beverages to persons until age twenty-one." S.C. Const. art. XVII, § 14 (1976); *see also* S.C.Code Ann. § 15–1–320(a) (2005) (references to minors in state law deemed to mean persons under the age of 18 years except when laws relate to alcohol sales). While underage persons have full social and civil rights, we find the public policy of this State treats these individuals as lacking full adult capacity to make informed decisions concerning the ingestion of alcoholic beverages. *See Norton v. Opening Break, supra.* Accordingly, we hold that adult social hosts who knowingly and intentionally serve, or cause to be served, alcoholic beverages to persons they know or should know to be between the ages of 18 and 20 may incur liability where, under the same circumstances, they are immune for service to persons aged at least 21 years old.

We next explain why the duty we impose today is founded upon our responsibility to adapt the common law to the realities of the modern world rather than predicated on the alcohol beverage control statutes criminalizing the transfer or gift of alcoholic beverages to persons less than 21 years of age. S.C.Code Ann. §§ 61–4–90; 61–6–4070.

■ While both S.C.Code Ann. § 61–4–90 and § 61–6–4070 begin with a general prohibition on the transfer of alcoholic beverages to persons under the age of 21, each goes on to provide a number of exceptions to the general rule. In brief,

---

8. S.C.Code Ann. § 61–4–90 (Supp.2005) (beer or wine); § 61–6–4070 (Supp.2005) (alcoholic liquors).

these exceptions allow a parent or spouse over the age of twenty-one to serve their underage child or spouse; permit the giving of alcohol in conjunction with a religious ceremony or purpose; and permit a student to "taste" an alcoholic beverage in conjunction with academic instruction. As other courts have explained, such exceptions logically require us to construe these 'giving' statutes to protect only the person under 21 who consumes the alcohol, not the general public. *E.g., Davis v. Billy's Con–Teena, Inc.*, 284 Or. 351, 587 P.2d 75 (Or.1978) *superseded by statute* as stated in *Gattman v. Favro*, 306 Or. 11, 757 P.2d 402 (1988); *Hostetler v. Ward*, 41 Wash.App. 343, 704 P.2d 1193 (Wash.App.1985). A holding that an adult social host is liable only to the underage drinker herself and not to any injured third party would contravene the public policy of this state, *see Tobias, supra,* yet a duty explicitly predicated on these statutes would logically permit us only that rule. We, therefore, find no civil cause of action is created by these statutes. *Cf., Whitworth v. Fast Fare Markets of S.C., Inc.*, 289 S.C. 418, 338 S.E.2d 155 (1985) (no civil cause of action under contributing to delinquency of minors statute or statute criminalizing sale of tobacco to minors).

Although we find no duty in the statutes, we do find in them support for our decision to extend the common law and impose liability on adult social hosts who knowingly and intentionally serve underage guests. In determining whether to adhere to our current common law rule that a social host owes no duty, we look to the numerous statutes prohibiting the furnishing of alcohol to persons under 21, and to other legislation governing driving under the influence. As Wisconsin Chief Justice Hallows said over 35 years ago in dissent,

> The time has arrived when this court should again exercise its inherent power as the guardian of the common law and [impose liability for service of alcohol].... [T]he common law in this state ... has been to the contrary ... but the basis upon which these cases were decided is sadly eroded by the shift from commingling alcohol and horses to commingling alcohol and horsepower.

*Garcia v. Hargrove*, 46 Wis.2d 724, 737, 176 N.W.2d 566, 572 (1970).

Fourteen years after this dissent, Wisconsin adopted the Chief Justice's view. *See Sorensen v. Jarvis,* 119 Wis.2d 627, 350 N.W.2d 108 (1984).

## CONCLUSION

Consonant with our duty to declare the common law, we hold that henceforth adult social hosts who knowingly and intentionally serve, or cause to be served, an alcoholic beverage to a person they know or should know is between the ages of 18 and 20 are liable to the person served, and to any other person, for damages proximately caused by the host's service of alcohol.

The order granting the *Marcum* defendants summary judgment is

**AFFIRMED.**

The decision of the Court of Appeals affirming the respondent's jury verdict against petitioner in *Barnes* is

**REVERSED.**

MOORE, WALLER and BURNETT, JJ., concur.

TOAL, C.J. concurring in part, dissenting in part in a separate opinion.

Chief Justice TOAL, concurring in part, dissenting in part:

I concur in part and respectfully dissent in part. Although I agree with the majority's adoption of the rule imposing limited social host liability, I would reverse and remand both cases and allow the parties to litigate their disputes under the rule adopted by the Court.

Generally, judicial decisions creating new substantive rights have prospective effect only, whereas decisions creating new remedies to vindicate existing rights are applied retrospectively. Stated otherwise, prospective application is required when liability is created where formerly none existed. *Toth v. Square D Co.,* 298 S.C. 6, 8, 377 S.E.2d 584, 585 (1989) (internal citations omitted). In applying our general rule, this Court and the court of appeals have made decisions "selectively prospective" by applying the rule to the case at bar and to all future cases. *Steinke v. South Carolina Dep't of Labor,*

*Licensing, and Regulation,* 336 S.C. 373, 400 n. 8, 520 S.E.2d 142, 156 n. 8 (1999) (explaining retroactive and prospective application of decisions); *see, e.g., Ludwick v. This Minute of Carolina, Inc.,* 287 S.C. 219, 225–26, 337 S.E.2d 213, 216 (1985) (holding "[o]ur modification of the termination at will doctrine, as set forth in this opinion, applies only to this case and to those causes of action arising after the filing of this opinion . . . ."); and *McCormick v. England,* 328 S.C. 627, 644, 494 S.E.2d 431, 439 (Ct.App.1997) (recognizing the common law tort of breach of a physician's duty of confidentiality, and applying decision in this case and prospectively).[9]

---

**9.** The majority incorrectly implies that this Court may only permit a party to benefit from the recognition of new tort liability where the imposition of the new tort liability was foreshadowed by previous decisions. However, assuming foreshadowing is required, I believe our pronouncement of limited first and third party social host liability was adequately foreshadowed by our extension of liability in the commercial context and the statutory laws criminalizing such behavior. *See* S.C.Code Ann § 61–4–90 (Supp.2005) *and* § 61–6–4070 (Supp.2005). *See also Norton v. Opening Break of Aiken, Inc.,* 313 S.C. 508, 443 S.E.2d 406 (Ct.App.1994) *aff'd* 319 S.C. 469, 462 S.E.2d 861 (1995); *Whitlaw v. Kroger Co.,* 306 S.C. 51, 410 S.E.2d 251 (1991).

Additionally, the majority incorrectly assumes that *Ludwick* and *McCormick* represent this Court's entire jurisprudence on the matter. However, this Court has often allowed the parties to an action which prompts a rule change to utilize the new rule. *See Davenport v. Cotton Hope Plantation Horizontal Property Regime,* 333 S.C. 71, 508 S.E.2d 565 (1998) (holding that the abolition of assumption of risk as an "all or nothing" defense would be applied to the action in which that ruling was made and to all other causes of action that arose or accrued after date of opinion); *Kinard v. Augusta Sash & Door Co.,* 286 S.C. 579, 336 S.E.2d 465 (1985) (recognizing the new cause of action by plaintiff bystander for negligent infliction of emotional distress and applying the new rule to the case); *McCall v. Batson,* 285 S.C. 243, 329 S.E.2d 741 (1985) (prospectively abolishing sovereign immunity and applying the new rule to the case before the court); *Fitzer v. Greater Greenville, S.C. Young Men's Christian Ass'n,* 277 S.C. 1, 282 S.E.2d 230 (1981) (applying the new rule abrogating the doctrine of charitable immunity to the case which prompted the rule change); *Elam v. Elam,* 275 S.C. 132, 268 S.E.2d 109 (1980) (abolishing the court-created parental immunity doctrine applicable to tort actions brought by unemancipated minors against their parents and applying the new rule to the case at hand and prospectively); *Brown v. Anderson County Hosp. Assoc.,* 268 S.C. 479, 234 S.E.2d 873 (1977) (modifying doctrine of charitable immunity, such that charitable hospitals are liable for heedless and reckless acts, and applying decision in this case and prospectively).

The majority points out that many of the aforementioned cases involve the abolition of an affirmative defense. While I agree that the

In my view, we should extend our decision to impose limited first and third party social host liability to the cases before us today and all future cases which arise after the filing of our opinion. Resolving the cases in this manner would, in my opinion, allow the plaintiffs the benefit of the change in the law which they induced without making our decision retroactive.

The majority declines to extend its ruling to the instant cases because it would "offend notions of fairness . . . to retroactively impose tort liability where previously there had been none. . . ." In support of this holding, the majority relies upon the Court's decision in *Russo v. Sutton*, 310 S.C. 200, 422 S.E.2d 750 (1992). While the Court did not apply its decision abolishing the tort of alienation of affections in *Russo*, in my view, *Russo* is not the exclusive representation of how this Court and others handle cases where a judicial decision prompts a change in the law.[10] *See supra* note 1.

Although I do not think that the imposition of newly created tort liability is appropriate in all cases, in my view, to expect litigants to bear the burdens associated with effecting a needed change in the law without the expectation that they will receive the benefits of the change in the law is more offensive

---

abolition of an affirmative defense does not "create a new duty," such abolition *does impose liability* where previously none existed. *See McCall*, 285 S.C. at 246, 329 S.E.2d at 742 (acknowledging the creation of new tort liability).

**10.** Again, I believe the portion of the majority's rationale which relies on the concept of fairness is misguided. While I understand that fairness is an important consideration, I cannot envision that an extension of *potential* liability would amount to unfairness in the cases before us today. Arguably, tort liability involves a calculation of risks in evaluating whether to undertake a certain course of action. In the majority's view, extending our ruling to the cases before us today impermissibly adds another variable in the calculus. Stated otherwise, the majority might argue that the potential imposition of civil liability upon the defendants in these cases impermissibly increases their expected accident costs such that it would dramatically change the nature of their decision to serve alcohol at their events. In my view, this critically overstates the case. Although no civil liability existed for social hosts at the time of these incidents, I find it difficult to believe that the defendants were ignorant of any potential liability which could result from serving alcohol to underage drinkers in light of the existence of criminal statutes prohibiting such behavior and our expanding extension of liability in the commercial context.

to our notions of fairness as well as crippling to our legal system.[11] *Cf. Aka v. Jefferson Hosp. Assoc., Inc.,* 344 Ark. 627, 42 S.W.3d 508, 519 (2001) (concluding that "appellant's efforts to bring about a needed change in the law should not go unrewarded, because without such inducement change might not occur.") (internal citations omitted).[12] Additionally, I believe the majority's resolution of this case is profoundly impractical and based on hypertechnical analysis of citations that does not adequately provide a rationale for why past litigants have been able to pursue their cases while the litigants in these cases are denied similar relief.

For the foregoing reasons, I would reverse and remand these cases with instructions to retry them in accordance with our recognition of limited first and third party social host liability.

**11.** The majority also finds that the plaintiffs have contended only that the defendants were negligent. However, in my opinion, the complaints in these cases actually allege both negligent and willful conduct. Because the plaintiffs' complaints allege an intentional tort, there is no impediment to remanding these cases to allow the parties to proceed under the new rule.

**12.** The majority misapprehends the use of *Aka* in this dissent. Clearly, from the context and form of the citation, *Aka* is used to emphasize the rationale under which I find it both practical and just to extend our ruling today to the litigants in these cases, and not in support of the general concept of retroactive/prospective application of rules. However, for further clarification, I use *Aka* only to support the proposition that litigants should not be expected to bear the burdens associated with effecting a needed change in the law without the expectation that they will receive the benefits of the change in the law. Accordingly, my use of this case does not conflict with South Carolina's jurisprudence on the retroactive application of statutory changes in the law.